# EXHIBIT A

# SUMMONS

Attorney(s) William Powers
Office Address 3102 Oak Lawn Ave., Suite 1100
Town, State, Zip Code Dallas, Texas 75219

Telephone Number 214-521-3605
Attorney(s) for Plaintiff Bethlehem Township Board of Ed.

**Superior Court of New Jersey**

Hunterdon County

Law Division

Docket No: HNT-L-000152-24

Plaintiff(s)

vs.

3M Company, et al.

Defendant(s)

**CIVIL ACTION SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

Michelle Smith
Clerk of the Superior Court

DATED: 04/15/2024

Name of Defendant to Be Served: Tyco Fire Products, LP

Address of Defendant to Be Served: c/o CT Corporation - 820 Bear Tavern Rd., Suite 305, Trenton, NJ 08628

William Powers (NJ Bar ID 073842013)
Scott Summy (TX Bar No. 19507500)
Cary McDougal (TX Bar No. 13569600)
Carla Burke Pickrel (TX Bar No. 24012490)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
(214) 521-3605 Telephone
(214)523-6600 Fax

Philip F. Cossich, Jr.
Brandon J. Taylor (LA Bar No. 27662)
Darren Sumich (LA Bar No. 23321)
David A. Parsiola (LA Bar No. 21005)
Christina M. Cossich (LA Bar No. 32407)
Andrew Cvitanovic (LA Bar No. 34500)
Luana N. Smith (LA Bar No. 35534)
Christina Cossich (LA Bar 32407)
Jody J. Fortunato (LA Bar 31728)
**COSSICH, SUMICH, PARSIOLA & TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
(504) 394-9000

***Attorneys for Plaintiff***

<table>
<tr>
<td>BETHLEHEM TOWNSHIP BOARD OF EDUCATION,<br><br>Plaintiff,<br><br>vs.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.;<br>AGC CHEMICAL AMERICAS, INC.;<br>AGC INC. F/K/A ASAHI GLASS CO.;<br>ARCHROMA US, INC.;<br>ARKEMA INC.;<br>BASF CORPORATION;<br>BUCKEYE FIRE EQUIPMENT COMPANY.;<br>CARRIER GLOBAL CORPORATION;<br>CHEMDESIGN PRODUCTS, INC.;<br>CHEMGUARD, INC.;<br>CHEMICALS INC.;<br>CHUBB FIRE, LTD.;<br>CLARIANT CORP.;</td>
<td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td>
<td>SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION - HUNTERDON COUNTY<br><br>DOCKET NO.<br><br>Civil Action<br><br><u>COMPLAINT</u></td>
</tr>
</table>

DEEPWATER CHEMICALS, INC.; )
DOE DEFENDANTS, JOHN 1-49; )
DYNAX CORP.; )
KIDDE PLC INC.; )
NATIONAL FOAM, INC.; )
NATION FORD CHEMICAL COMPANY; )
RAYTHEON TECHNOLOGIES )
CORPORATION F/K/A UNITED )
TECHNOLOGIES CORPORATION; )
TYCO FIRE PRODUCTS, LP; AND )
UTC FIRE & SECURITY AMERICAS )
CORPORATION, )

Defendants.

**COMPLAINT**

Plaintiff Bethlehem Township Board of Education ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendants 3M Company, Chemguard, Inc., Tyco Fire Products, LP, National Foam Inc., Buckeye Fire Equipment Company, AGC Chemical Americas, Inc., AGC Inc. f/k/a Asahi Glass Co., Archroma US, Inc. Arkema Inc., BASF Corporation, Carrier Global Corporation, ChemDesign Products, Inc., Chemicals Inc., Chubb Fire, LTD., Clariant Corp., Deepwater Chemicals, Inc., Dynax Corp., Kidde PLC Inc., Nation Ford Chemical Company, Raytheon Technologies Corporation f/k/a United Technologies Corporation, UTC Fire & Security Americas Corporation, and John Doe Defendants 1-49 (collectively, "Defendants"). Plaintiff, based on information, belief and investigation of Counsel, alleges as follows:

## I. SUMMARY OF THE CASE

1. Plaintiff brings this action against Defendants to recover the considerable costs and damages that have incurred—and that will inevitably continue to incur—as a result of the presence of toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), in Plaintiff's public water supply.

2. Plaintiff operates two groundwater wells to provide drinking water to two schools. The two school wells are Non Transient Non Community Water Systems that serve fewer than 3,300 people and are therefore excluded from the 3M Settlement.

3. Plaintiff's wells, water sources and supply, water supply and delivery system infrastructure, including any treatment systems, are collectively referred to as "Plaintiff's Property" in this Complaint.

4. Plaintiff's water supply is currently contaminated with PFAS compounds, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"). PFOA and PFOS have long been manufactured as components for aqueous film-forming foam ("AFFF")—a product used to control and extinguish aviation, marine, fuel, and other shallow spill fires.

5. PFOA and PFOS both are known to be toxic, persistent in the environment, and resistant to biodegradation. These compounds move easily through soil and groundwater and pose a significant risk to environmental and human health and safety. Both are animal carcinogens and likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA") has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy-induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

6. Upon information and belief, at various times throughout the 1960s to present date,

---

[1] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document No. 822-R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023); *see also* EPA, *Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)*, EPA Document Number: 822-R-16-005 (May 2016) at 16, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OM4O.txt (last accessed May 8, 2023).

HNT-L-000152-24 04/11/2024 5:14:52 PM Pg 4 of 28 Trans ID: LCV2024937919

Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in Massachusetts.

7. At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

8. At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant Products, as Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products.

9. As a result of Defendants' unreasonable acts and omissions, PFAS compounds have migrated through the soil and into the groundwater, have entered critical sources of water relied upon by Plaintiff to provide for its citizens and customers, and have contaminated Plaintiff's Property—thereby subjecting Plaintiff, its customers, and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are

responsible for the PFAS contaminants released into Plaintiff's Property.

10. Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted herein. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II. PARTIES

### *A. PLAINTIFFS*

11. Plaintiff's principal place of business is at 280 Asbury-West Portal Road, Asbury, New Jersey, 08802. Plaintiff owns and operates public water supply system pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300(f)(15), and the reporting system of the U.S. EPA.

12. Plaintiff's water systems draw water from two groundwater wells.

13. Plaintiff is located in an area served by several volunteer fire departments that provide fire response services in the area. Upon information and belief, Defendants' AFFF products were used for fire-training and fire-fighting activities at sites in and/or around Plaintiff's Property.

14. Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public, as well as an interest in Plaintiff's Property.

### DEFENDANTS

15. Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

16. **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

17. 3M is the only company that manufactured and/or sold AFFF containing PFOS.

18. **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

19. **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

20. **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

21. **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

22. **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon

information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

23. **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

24. **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

25. **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

26. **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

27. **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

28. **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C.,

Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

29. **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

30. **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

31. **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

32. **KIDDE PLC:** Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

33. **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that contained PFOA.

34. **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a

South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

35. **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

36. **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

37. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

38. Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

39. **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United Technologies Corporation.

40. Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time

Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

41. All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the state of Massachusetts.

42. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

43. The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## III. JURISDICTION & VENUE

44. This Court has jurisdiction pursuant to New Jersey Court Rule 4:3-1(a)(5).

45. This Court has jurisdiction over Defendants because they are either New Jersey corporations authorized to do business in New Jersey, are registered with the New Jersey Secretary of State, do sufficient business with sufficient minimum contacts in New Jersey, or otherwise intentionally avail themselves of the New Jersey market through the sale, manufacturing, distribution and/or processing of products in New Jersey to render the exercise of jurisdiction over Defendants by the New Jersey courts consistent with traditional notions of fair play and substantial

justice.

46. Venue is appropriate in this county pursuant to New Jersey Court Rule 4:3-2 because the affected property is located in this county; Plaintiff is a municipal subdivision, and the cause of action arose in this county; Plaintiff is located in, and has its usual place of business, in this county.

## IV. FACTUAL ALLEGATIONS

### *A. The PFAS Contaminants at Issue: PFOA and PFOS*

47. Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

48. PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

49. PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

50. Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and

humanblood serum.[2]

51. Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

52. Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[5]

53. Additionally, the EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an

---

[2] *See* note 1, *supra*.

[3] *See id.*

[4] *See* EPA, *Fact Sheet PFOA & PFOS Drinking Water Health Advisories*, EPA Document Number: 800-F-16-003, available at available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P100OR9W.txt (last accessed May 8, 2023).

[5] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed May 8, 2023).

airfield at which [PFOA/PFOS] were used for firefighting."[6]

54. EPA continues to research the effects of PFAS. In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt). EPA announced new Interim Updates Health Advisory levels of 0.004 ppt for PFOA and 0.02 ppt for PFOS.[7]

55. In 2018, the State of New Jersey became the first state to set a maximum contaminant level ("MCL") for any PFAS compound.[8] An MCL is the highest allowable concentration of a contaminant in water delivered to a user of a public drinking water supply. In 2020, New Jersey set MCLs of 14 parts per trillion ("ppt") for PFOA and 13 ppt for PFOS.[9]

*B. <u>Aqueous Film-Forming Foam (AFFF) was a Product Containing PFOS and/or PFOA at the Relevant Time Period</u>*

56. Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

---

[6] *See* note 4, *supra*.

[7] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, EPA Document Number 822-F-22-002, available at https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed May 8, 2023).

[8] State of New Jersey, Department of Environmental Protection, *Affirming National Leadership Role, New Jersey Publishes Formal Stringent Drinking Water Standards for PFOA and PFOS*, (June 1, 2020), available at https://www.nj.gov/dep/newsrel/2020/20_0025.htm (last accessed May 20, 2023).

[9] State of New Jersey, Department of Environmental Protection, *PFAS Standards and Regulations*, available at https://www.nj.gov/dep/pfas/standards.html (last accessed May 20, 2023).

57. Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

58. The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

59. When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

60. Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

61. Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

62. Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

63. Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Connecticut for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended

by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater, enter into Plaintiff's property, thereby contaminating Plaintiff's wells and property, as well as causing other extensive and ongoing damages to Plaintiff's Property.

64. Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

C. *Defendants' Knowledge and Concealment of the Dangers Involved*

65. On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

66. At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

67. For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[10]

---

[10] *See* Office of Minnesota Attorney General, Exhibit List, No. 1588, Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos.

68. By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

69. In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[11]

70. Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[12]

71. Notwithstanding their respective knowledge of the dangers involved with AFFF containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil and/or waste water

---

8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at https://www.ag.state.mn.us/Office/Cases/3M/docs/PTX/PTX1588.pdf (last accessed May 8, 2023).

[11] *See* DuPont, *C-8 Blood Sampling Results,* available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

[12] *See* 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), available at https://static.ewg.org/files/226-0483.pdf?_gl=1*1u237yp*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.39402538.885409355.1683587869-581783177.1682689989 (last accessed May 8, 2023).

disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

72. As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's Property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its Property at significant expense, loss, and damage to Plaintiff.

73. Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

*D.* *__THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION__*

74. PFOA and PFOS have been detected in varying amounts, at varying times in water extracted from Plaintiff's wells. On at least one occasion, PFAS have been present at levels above

New Jersey's MCLs and/or the federally advised Health Advisory Levels for PFOA and PFOS.[13]

75. The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff. It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its groundwater source, well water, or elsewhere on its property requires investigation, remediation and monitoring.

76. Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

77. The invasion of Plaintiff's Property with PFOA and PFOS is continuous and recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day—the result of which is a new harm to the Plaintiff and its property in each and every occurrence.

78. The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's wells depend. Plaintiff's interests in protecting the quality of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

79. Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages moreover include, but are not limited to, the past and future incurred costs associated with the

---

[13] *See* note 7, *supra*.

HNT-L-000152-24 04/11/2024 5:14:52 PM Pg 19 of 28 Trans ID: LCV20249379l9

investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

**FIRST CAUSE OF ACTION**
**STRICT LIABILITY -- DEFECTIVE DESIGN**

80. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

81. Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

82. All of Defendants' AFFF products were manufactured for placement into trade or commerce.

83. Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

84. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers and marketers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous in design for its intended, foreseeable, and reasonably anticipated uses.

85. Defendants knew of these risks associated with PFOA and PFOS and failed to use reasonable care in the design of their AFFF products.

86. When Defendants placed AFFF products into the stream of commerce, they were defective, unreasonably dangerous, and not reasonably fit, suitable, and safe for their intended, foreseeable and ordinary transportation, storage, handling, and uses for the following reasons:

a. When used as intended and directed, AFFF products enter into the environment and PFOA and PFOS enter into the environment;

b. When AFFF is used as intended and directed, PFOA and PFOS move into soil,

surface water bodies, and groundwater;

c. PFOS and PFOA are highly persistent in the environment and do not biodegrade;

d. Very low concentrations of PFOS and PFOA are associated with human and environmental health risks.

87. AFFF containing PFOA and/or PFOS poses greater danger to the environment than would be expected by ordinary persons such as Plaintiff and the general public.

88. At all times, Defendants could make AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which could prevent Plaintiff's damage.

89. The risks posed by PFOA/PFOS-containing AFFF far outweigh the products' utility as a flame-control chemical.

90. The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate Plaintiff's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

91. Had Plaintiff known of these dangers, it would not have purchased AFFF containing PFOA and PFOS.

92. The above-described defects exceeded the knowledge of the ordinary person and by the exercise of reasonable care Plaintiff would not be able to avoid the harm caused by AFFF.

93. AFFF was distributed and sold in the manner intended or reasonably foreseen by the Defendants, or as should have been reasonably foreseen by Defendants.

94. AFFF reached the consumer and the environment in a condition substantially unchanged from that in which it left Defendants' control.

95. As a direct and proximate result of Defendants' unreasonably dangerous and/or

defective condition of PFOA/PFOS-containing AFFF, PFAS contaminates and threatens to contaminate Plaintiff's Property; requires and/or will require additional testing and monitoring of the aquifers and production wells for PFAS contamination; requires and/or will require installation of, and operation and maintenance of, a system to filter out PFAS.

96. As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFOA/PFOS-containing AFFF, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

97. Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's Property rights.

## SECOND OF ACTION
## STRICT LIABILITY - FAILURE TO WARN

98. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

99. As manufacturers, designers, distributors, suppliers, sellers and marketers of PFOA/PFOS-containing AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff, the public, and public officials.

100. At all times, Defendants knew or should have known that PFOA/PFOS-containing

AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a. PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

b. Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

c. PFOA and/or PFOS pose significant threats to public health; and

d. PFOA and/or PFOS create real and potential environmental damage.

101. The foregoing facts relating to the hazards that AFFF poses to groundwater are not the sort of facts that Plaintiff and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

102. Defendants knew of the health and property damage risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS-containing AFFF or an instruction that would have allowed Plaintiff to avoid the damage to its property.

103. Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFOA/PFOS-containing AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFOA/PFOS-containing AFFF to Plaintiff, governmental agencies, or the public.

104. Plaintiff would have heeded legally adequate warnings and would not have purchased products containing PFOA and PFOS or would have taken steps to ensure PFOA/PFOS-containing AFFF was treated differently to prevent potential exposure and contamination of the

HNT-L-000152-24 04/11/2024 5:14:52 PM Pg 23 of 28 Trans ID: LCV2024937919

environment.

105. As a direct and proximate result of Defendants' failure to warn, PFAS contaminates and threatens to contaminate Plaintiff's Property; requires and/or will require additional testing and monitoring of the aquifers and production wells for PFAS contamination; requires and/or will require installation of, and operation and maintenance of, a system to filter out PFAS.

106. As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

107. Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

## **THIRD CAUSE OF ACTION**

NEGLIGENCE

108. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

109. As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of PFOA/PFOS-containing AFFF, Defendants owed a duty to Plaintiff and to all persons whom their products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFOA/PFOS-containing AFFF.

110. Defendants at all times had the financial and technical means to determine whether any latent defects existed in AFFF containing PFOA and PFOS and to warn public officials, users,

and the general public of any such latent defects known to them, their agents and employees.

111. At all times, Defendants knew or should have known that PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a. PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

b. Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

c. PFOA and/or PFOS pose significant threats to public health; and

d. PFOA and/or PFOS create real and potential environmental damage.

112. Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating water resources.

113. Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources, and are possible carcinogens, Defendants negligently:

a. Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing AFFF;

b. Issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around Plaintiff's wells;

c. Failed to recall and/or warn the users of AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

d. Failed and refused to issue the appropriate warning and/or recalls to the users of PFOA/PFOS-containing AFFF, notwithstanding the fact that Defendants know the

identity of the purchasers of the AFFF.

114. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

115. Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

## FOURTH CAUSE OF ACTION

TRESPASS

116. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

117. Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water and the rights to appropriate and use groundwater.

118. Defendants manufactured, distributed, marketed and promoted PFOA/PFOS-containing AFFF with the actual knowledge and/or substantial certainty that PFOA/PFOS-containing AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

119. Defendants negligently, recklessly, and/or intentionally produced and marketed PFOA/PFOS-containing AFFF in a manner that caused PFOA and PFOS to contaminate Plaintiff's property.

120. As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and

continues to suffer property damage requiring investigation, remediation and monitoring costs to be determined at trial.

121. Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF NEW JERSEY SPILL ACT**

122. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

123. By committing the acts alleged in this complaint, each Defendant has discharged hazardous substances, or is otherwise responsible for discharging hazardous substances, through the intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of the hazardous substances, AFFF, PFOA, and PFOS, into the waters or onto the lands of the State. N.J.S.A. 58:10-23.11.

124. As a direct and proximate result of Defendants' conduct, Defendants have caused and continue to cause significant damage to Plaintiff and Plaintiff's Property, as alleged in this Complaint

125. By committing the acts alleged in this complaint, Defendants are liable, jointly and severally, and without regard to fault, to Plaintiff for damage to Plaintiff's real and personal property incurred or suffered as a result of such release or threatened release of AFFF, PFOA, and PFOS, including for all cleanup and removal costs, pursuant to N.J.S.A. 58:10-23.11g(c)(1).

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages according to proof including, but not limited to:
   a. Costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Plaintiff's Property;
   b. Costs and expenses related to past, present, and future treatment and remediation of PFOA and/or PFOS contamination of Plaintiff's Property;
2. Costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's Property;
3. Punitive damages;
4. Consequential damages;
5. Pre-judgment and post-judgment interest;
6. Any other and further relief as the Court deems just, proper, and equitable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to New Jersey Court Rule 4:25-4, Scott Summy is designated as trial counsel for the Plaintiff, in the above matter.

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to New Jersey Court Rule 4:5-1, it is stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding to the best of our knowledge or belief. Also, to the best of our belief, no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this pleading, we know of no

other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

**JURY TRIAL DEMANDED**

Plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated: April 11, 2024

**BARON & BUDD, P.C.**
Attorneys for Plaintiff

*/s/ William Powers*

William Powers

New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed, or attorney's signature is not affixed.

**For Use by Clerk's Office Only**

| Payment type | Charge/Check Number | Amount | Overpayment | Batch Number |
|---|---|---|---|---|
| ☐ check<br>☐ charge<br>☐ cash | | $ | $ | |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| William Powers | (214) 521-3605 ext. | Hunterdon |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| Baron & Budd, P.C. | |

| Office Address - Street | City | State | Zip |
|---|---|---|---|
| 3102 Oak Lawn Ave., Suite 1100 | Dallas | TX | 75219 |

| Document Type | Jury Demand |
|---|---|
| Complaint | ■ Yes ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Bethlehem Township Board of Educatic | Bethlehem Township Board of Education v. 3M Company, et al. |

Case Type Number (See page 3 for listing) 606

Are sexual abuse claims alleged? ☐ Yes ■ No

Does this case involve claims related to COVID-19? ☐ Yes ■ No

Is this a professional malpractice case? ☐ Yes ■ No

If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit.

Related Cases Pending? ☐ Yes ■ No

If "Yes," list docket numbers

Do you anticipate adding any parties (arising out of same transaction or occurrence)? ☐ Yes ■ No

Name of defendant's primary insurance company (if known) ☐ None ■ Unknown

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship? ☐ Yes ■ No

If "Yes," is that relationship:

☐ Employer/Employee ☐ Friend/Neighbor ☐ Familial ☐ Business

☐ Other (explain) ______

Does the statute governing this case provide for payment of fees by the losing party? ☐ Yes ■ No

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

♿ Do you or your client need any disability accommodations? ☐ Yes ■ No

If yes, please identify the requested accommodation:

Will an interpreter be needed? ☐ Yes ■ No

If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: */s/ William Powers*

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES**

(Choose one and enter number of case type in appropriate space on page 1.)

## Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

## Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

## Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 282 | Fosamax |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |
| 639 | Pinnacle Metal-on-Metal (MoM) Hip Implants |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action** ☐ **Title 59** ☐ **Consumer Fraud**

☐ **Medical Debt Claim**

# Civil Case Information Statement

**Case Details: HUNTERDON | Civil Part Docket# L-000152-24**

**Case Caption:** BETHLEHEM TOWNSHIP B OARD OF E VS 3M COMPANY (FK

**Case Initiation Date:** 04/11/2024

**Attorney Name:** WILLIAM GILLEN POWERS

**Firm Name:** BARON & BUDD

**Address:** 3102 OAK LAWN AVE STE 1100 DALLAS TX 75219

**Phone:** 2145213605

**Name of Party:** PLAINTIFF : Bethlehem Township Board of Ed

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: Bethlehem Township Board of Ed? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/11/2024
Dated

/s/ WILLIAM GILLEN POWERS
Signed

HUNTERDON COUNTY JUSTICE CENTER
CIVIL DIVISION
65 PARK AVE
FLEMINGTON NJ 08822

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (908) 824-9750
COURT HOURS 8:30 AM - 4:30 PM

DATE: APRIL 11, 2024
RE: BETHLEHEM TOWNSHIP B OARD OF E VS 3M COMPANY (FK
DOCKET: HNT L -000152 24

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 3.

DISCOVERY IS 450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS: HON KEVIN M. SHANAHAN

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 001 AT: (908) 824-9750 EXT 13771.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.

PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: WILLIAM G. POWERS
BARON & BUDD
3102 OAK LAWN AVE
STE 1100
DALLAS TX 75219

ECOURTS